UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-60294-CIV-MORENO/SIMONTON

ABM FINANCIAL SERVICES, INC.

      Plaintiff,

v.

EXPRESS CONSOLIDATION, INC.

      Defendant.

_____/

ORDER GRANTING PLAINTIFF'S MOTION TO
COMPEL RESPONSES TO ITS FIRST SET OF INTERROGATORIES AND
ITS FIRST REQUEST FOR PRODUCTION OF DOCUMENTS, AND
<u>DENYING PLAINTIFF'S MOTION FOR SANCTIONS</u>

      This cause arose on Plaintiff, ABM Financial Services Inc.'s ("ABM"), motion to compel Defendant, Express Consolidation, Inc. ("Express"), to supplement its interrogatory responses and to produce documents responsive to ABM's First Request for Production of Documents (DE # 28).  Defendant responded (DE # 37) and Plaintiff replied (DE # 38).  The Honorable Federico A. Moreno, Chief United States District Judge, has referred all pretrial matters to the undersigned Magistrate Judge (DE # 16).  For the reasons stated below, ABM's motion to compel is granted and its motion for sanctions is denied.

I.    <u>Background</u>

      ABM proceeds on its four-count complaint, in which it asserts a claim for breach of contract (Count I) and unjust enrichment (Count II), and seeks the imposition of an accounting (Count III) and a constructive trust (Count IV) (DE # 1).  According to the complaint, ABM performed telemarketing for Express, a debt management and consolidation company, until an adverse FTC action against Express caused Express to

terminate its contract with ABM without providing ABM the advance notice or fees it was entitled to collect under their Independent Contractor Agreement (DE # 1 at 4-5).  ABM has alleged that since Express was obligated to pay ABM a fixed portion of the payments it received from customers procured by ABM, it is therefore entitled to impose a constructive trust on those assets, which are deposited in an identifiable bank account. (DE # 1 at 7-8).

At issue in the instant Motion to Compel are three of Express' interrogatory responses, which ABM considers to be lacking, and a total of six requests for production, which ABM insists Express has not satisfactorily fulfilled.

II.   **Analysis**

The undersigned will consider each disputed discovery request in turn:

A.   **Interrogatory No. 5**

Interrogatory No. 5 asks Express to identify all accounts into which Express, as well as its principal, Randall L. Leshin, and his professional association, Randall L. Leshin, P.A.[1] have deposited fees from Express' customers who were procured by ABM. Express has provided a response insofar as it relates to accounts held in Express' name, but has objected to providing any information regarding Leshin's bank accounts, arguing that such information is "irrelevant" because Leshin is not a named defendant in this matter; and, that "ABM cannot show a basis or connection in which it can prove its 'breach of contract' claims against Express by obtaining [Leshin's] bank account

---

[1]     For ease of reference, Randall L. Leshin and Randall L. Leshin, P.A. shall hereafter be referred to as "Leshin," unless otherwise noted.

2

records" (DE # 37 at 4).[2]

It is unnecessary to decide whether Leshin's bank account records are "reasonably calculated to lead to the discovery of admissible evidence" pertaining to ABM's breach of contract claim, because, as ABM points out, it has also alleged a constructive trust claim. A constructive trust is an equitable remedy that divests property from one who, "through actual fraud, abuse of confidence reposed or accepted, or through other questionable means[,] gains something for himself which in equity and good conscience he should not be permitted to hold." *American Nat'l Bank of Jacksonville v. Fed. Dep. Ins. Corp.*, 710 F.2d 1528, 1541 (11th Cir. 1983) (quoting *Quinn v. Phipps*, 113 So. 419, 422 (Fla. 1927) as cited in *Tuturro v. Schmier*, 327 So. 2d 71, 73-74 (Fla. 3d DCA 1979)) (emphasis omitted).

ABM has established a colorable basis for claiming a constructive trust over the portion of customer fees that Express was obligated to set aside as residual payments to ABM.[3] Based largely upon the admissions by Randall Leshin at his deposition (DE # 38-2 at 16-23) and during questioning the FTC Action (DE # 38-3 at 2-3, 7) that Express' customer fees are deposited in a special trust account held by Randall L. Leshin, P.A. and that Randall Leshin has access to and control over those accounts in his personal capacity, information about those accounts is relevant to ABM's claims and, therefore,

---

[2] Express supplemented and amended its responses and objections to ABM's discovery requests pursuant to this Court's September 5, 2007 Order on Discovery Procedures (DE # 33).

[3] The undersigned notes that there is a pending motion to dismiss the claim for a constructive trust; however, under the circumstances of this case, and based upon the nature of this request, as well as the confidentiality order in place, the undersigned has determined that it is not appropriate to stay discovery pending the ultimate determination of the motion to dismiss by the District Court.

discoverable.  *See In re Hecker*, 316 B.R. 375, 387-88 (Bankr. M.D. Fla. 2004) (constructive trust assets may be traced and recovered by the beneficiary notwithstanding the fact that "the money [may have been] transferred through various accounts or converted into different forms."); *Arduin v. McGeorge*, 595 So. 2d 203, 204 (Fla. 4th DCA 1992) ("Where money is the asset upon which it is proposed that a constructive trust be imposed," the funds may be traced "to a specific and existing account," or, alternatively, to another tangible asset, which was purchased with the money that was subject to the trust).

  B. <u>Interrogatory No. 7</u>

  ABM requested, in Interrogatory No. 7, that Express provide the name, address and contact information for other telemarketing providers who have contracted with Express since 2002 and to indicate the beginning and end of Express' business relationship with each.  Although Express has withdrawn its relevancy, overbreadth and undue burden objections to this interrogatory, its has only provided information pertaining to two telemarketing companies, Consumer Credit Consolidation, Inc.; and Tidyl Group, LLC (DE # 37 at 4-5).  ABM contends that Express has withheld information about other companies that Randall L. Leshin mentioned in this course of his testimony, but were not identified in Express' interrogatory response (DE # 38 at 5-6).  At the hearing, Express claimed that there are no other companies.  due to the confusion in the record, Express shall supplement its response to this interrogatory by either identifying other companies, or providing an affidavit that none exist.

  C. <u>Interrogatory No. 8</u>

  In Interrogatory No. 8, ABM asked whether Express has conducted any in-house telemarketing of its debt consolidation services since 2002 and to explain the duration and nature of those efforts.  Express has withdrawn its objections to this interrogatory

and responded that it has not conducted its own telemarketing during that time.
Express goes on, however, to request ABM to "clarify and/or define what it describes as
'in-house marketing efforts" (DE # 37 at 5).  To the extent that ABM's reply that "in-house
marketing efforts" is meant to define any marketing "as that term was used by Mr.
Leshin himself at the January 2007 hearing" (DE # 38 at 6) results in a material change in
the accuracy of Express' response to Interrogatory No. 8 and such corrective
information has not otherwise been made known to ABM, Express is obligated to
seasonably amend its response.  Fed. R. Civ. P. 26(e)(2).

        D.    <u>Request for Production Nos. 3 and 6</u>

        Express has complied with ABM's request to provide all documents relating to
customers procured by ABM, but has refused to produce "[a]ll documents that show
Express customers procured by any source [other than ABM] since January 15, 2004"
(Request No. 3) and "[a]ll documents regarding or indicating the current number of
'residual' customers of Express procured from any source [other than ABM]" (Request
No. 6), on the grounds that such discovery is irrelevant to this case, over-broad in its
scope and unduly burdensome to produce (DE # 37 at 6-7).

        ABM has argued that its ability to determine the percentage of Express'
customers who were procured by ABM are central to its ability to rebut Express' claims
that it cannot afford to pay the residual fees it (allegedly) owes ABM (DE # 38 at 7).  While
such a limited intended use of the materials would most likely doom ABM's discovery
request as it is drafted (i.e., "all documents" relating to "all customers"),  ABM has
tailored the scope of its request, asking only for "a customer list" similar to the one Mr.
Leshin identified in his deposition and which he produced in the underlying FTC Action

(DE # 38 at 7-8).[4]  Express shall provide to ABM the most recent customer list in its possession, such that it is possible to calculate the percentage of its customers that were referred to it through ABM's telemarketing efforts.

E.    Request No. 16

Express objects to Request No. 16, in which ABM has asked Express to produce balance statements for all of the bank accounts belonging to Express or Leshin into which Express' customers' fees were deposited.  Although Express has complied with the request as to Express' accounts, it has refused to produce the requested information with regard to bank accounts held by Leshin (DE # 37 at 8-9).  As discussed more fully in this Court's analysis of Interrogatory No. 5, the information sought by ABM is reasonably likely to lead to admissible evidence relating to ABM's constructive trust claim and its efforts to trace whatever identifiable assets are subject to that claim, regardless of the fact that those accounts are not held by a party to this action.  *See supra*, Part II.A.

F.    Request No. 17

Express has requested ABM to clarify what it means by "revenues" in Request No. 17, where ABM requests the productions of "[a]ll documents regarding Express' revenues from January 2004 to the present" (DE # 37 at 9).  Express' principal, Randall L. Leshin, testified at his deposition that he measures Express' profits by subtracting its revenue by the amount of its expenditures (DE # 36-2 at 26).  Therefore, Express shall produce documentation regarding any item that fits the definition so provided or that comports with the plain-meaning of revenue, meaning income from any source, most

---

[4]    With regard to Request Nos. 3 and 6, ABM stated in its Motion to Compel that, "[i]n lieu of 'all' documents showing Express' customer list, ABM is willing to accept just one such document if it contains the information requested" (DE # 28 at 7 & 8).

likely to consist, in Express' case, of payments to the company from customers in consideration of services provided.

> G.   Request Nos. 19 and 20

Finally, ABM seeks "documents regarding Express' marketing and/or sales strategy" in Request Nos. 19 and 20.[5]  Express does not object to those requests, but asserts that there are no responsive documents in its possession and requests a clearer definition of "marketing and/or sales strategy" (DE # 37 at 10).  ABM has indicated in its reply that

> '[s]ales strategy' means the planning and methods employed by Express to garner revenues [(*see* discussion of Request No. 17, *supra*)] and operate profitably . . . .  Documents that would show Express' marketing and/or sales strategy would include (but would not be limited to) business plans, budgets and projections

(DE # 38 at 10).  This Court adopts ABM's clarification of "marketing and/or sales strategy" as a reasonable one.  Thus, to the extent that the definition provided above encompasses documents in Express' possession that it previously considered outside the scope of the request, Express shall produce those documents.  Fed. R. Civ. P. 26(e)(2).

## III.   Sanctions

If a motion to compel "is granted . . . or requested discovery is provided after the motion was filed," the Federal Rules of Civil Procedure command that "the court shall, after affording an opportunity to be heard, require the party[,] deponent [or] counsel to pay to the moving party the reasonable expenses incurred in making the motion,

---

[5]   Request No. 19 seeks relevant documents that pre-date the January 25, 2007 FTC Action, while Request No. 20 seeks those produced after that date (DE # 38 at 9-10).

including attorney's fees."  But, if the court finds that "the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust," the imposition of sanctions are not mandated.  Fed. R. Civ. P. 37(a)(4).

While many of Express' initial objections to ABM's discovery requests were improper, consisting of vague, boilerplate objections, a significant portion of the discovery disputes in this case were ameliorated by the entry of the Order Granting Joint Motion for Protective Order Regarding Trade Secrets or Confidential, Proprietary or Commercial Information (DE # 30), which, to both parties' credit, was due in large part to their willingness to cooperate with each other in crafting a joint motion requesting such an order (DE # 29).

Soon thereafter, this Court entered an Order on Discovery Procedures (DE # 33) expressly permitting the each party to cure the deficiencies in any of its discovery responses that were filed prior to the Order in any subsequently-filed response to a motion to compel (DE # 33 at 1).  Therefore, ABM's motion for sanctions will be considered only in light of discovery responses arising after September 5, 2007.

Express drastically increased its production after the entry of the Confidentiality Order and largely complied with this Court's directives in the Order on Discovery Procedures in good faith.  For instance, this Court finds that Express' resistance to respond to Interrogatory No. 5 and Request No. 16 was reasonable because ABM's constructive trust claim rests on a novel legal theory, even though this Court ultimately rejected Express' efforts to withhold that information.  *See Neumont v. Monroe County, Fla.*, 225 F.R.D. 266, 268 (S.D. Fla. 2004) ("The court is in agreement with defendant's position that an inquiry [regarding the imposition of sanctions for asserting

8

unsuccessful discovery objections] should be made not in the ultimate outcome of the objections, but the substantive bases for such objections.  Just because the objections were ultimately withdrawn or overruled . . . does not mean the objections as asserted were not substantially justified.").

In addition, this Court finds, contrary to ABM's assertion, that Express' requests for clarification of certain terms, as in Interrogatory No. 8 and Request Nos. 17, 19 and 20 was not a disingenuous effort to "needlessly complicate[ ] ABM's attempts to conduct discovery" (DE # 38 at 9), especially in light of Express' willingness to produce the requested discovery pending clarification.  Imposing sanctions under such circumstances would be unjust under the meaning of the Federal Rules.

This Court notes, however, that Express' basis for withholding responses to Interrogatory No. 7 and Request Nos. 3 and 6 are tenuous at best.  Express' refusal to respond to Request Nos. 3 and 6 as over-broad and unduly burdensome is questionable in light of the fact that ABM represented in its Motion to Compel that it would have accepted a single document indicating the number of Express' customers (DE # 28 at 8).  Yet, Express' degree of fault is mitigated by the fact that the discovery request itself was broadly worded, notwithstanding its decision to narrow the scope of the request in its motion to compel.  It was not until its reply brief that ABM identified a <u>specific</u> document that would satisfy Request Nos. 3 and 6, and sanctions will only be imposed if they are necessary to ensure compliance to provide the singular document in its possession that is responsive to ABM's pared-down request.  In addition, Express' response to Interrogatory No. 7 appears incomplete in light of the deposition and hearing testimony of Randall L. Leshin.

Under the totality of the circumstances, however, the undersigned finds that the

imposition of sanctions is not justified at the present time.

Therefore, for the reasons stated above, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion to Compel is **GRANTED** as

described in the body of this Order, and Plaintiff's Motion for Sanctions is **DENIED**.

Defendant shall comply with this Order on or before Friday, December 10, 2007.

**DONE AND ORDERED** in Chambers in Miami, Florida, on November 29, 2007.


**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:
The Honorable Federico A. Moreno, Chief United States District Judge
All counsel of record

10