UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-60294-CIV-MORENO/SIMONTON

ABM FINANCIAL SERVICES, INC.

    Plaintiff,

v.

EXPRESS CONSOLIDATION, INC.

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION TO DISMISS**

Pending before this Court is the Motion to Dismiss Complaint filed by Defendant, Express Consolidation, Inc. ("Express") (DE # 10). Plaintiff, ABM Financial Services, Inc. ("ABM"), has filed a Response (DE #15) and Defendant has filed a Reply (DE # 17). The Honorable Federico A. Moreno, Chief United States District Judge, has referred all pretrial matters to the undersigned Magistrate Judge (DE # 16). A hearing on this motion was held on October 3, 2007, and this matter is ripe for consideration. Based upon a review of the record as a whole, and for the reasons stated below the undersigned **RECOMMENDS** that Defendant's motion to dismiss be **DENIED**.

    I.    **THE COMPLAINT**

ABM has filed a four-count Complaint against Express in which it seeks damages for breach of contract (Count I) and unjust enrichment (Count II); and requests accounting (Count III) and the imposition of a constructive trust (Count IV) (DE # 1). The jurisdiction of this Court is based on diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332. The facts contained in this Report and Recommendation are based upon the allegations of the Complaint, which are assumed to be true for the purposes of the

presently pending motion.

Defendant Express is a debt-management and debt-consolidation company which, in exchange for the payment of an initial fee and subsequent residual payments, consolidates the debts of individual consumers, and distributes payments made by the consumer to creditors (DE # 1 at ¶ 7). Plaintiff ABM is a telemarketing company that contracted with Express to market the services offered by Express to consumers, in exchange for compensation set forth in a written independent contractor agreement (the "Agreement") (DE # 1 at ¶ 8).[1]

Under the Agreement, Express paid ABM fees for each new customer it drew to Express ("New Customer Fees"), as well as residual fees for subsequent payments made by those same customers ("Residual Fees") (DE # 1 at ¶ 9). Initially, the new customer fee was $260 and the residual fee was $15; these fees were subsequently increased to $310 and $17 (DE # 1 at ¶ 10).

By December 2006, ABM was directing hundreds of customers per month to ABM (DE # 1 at ¶ 13). On December 11, 2006, the Federal Trade Commission ("FTC") filed a Complaint against Express for violating the Federal Trade Commission Act, the Telemarketing and Consumer Fraud and Abuse Prevention Act and the FTC's Telemarketing Sales Rule ("TSR") (DE # 1 at ¶ 14). Among other allegations, the FTC contended that Express falsely represented that it was a not-for-profit entity (DE # 1 at ¶ 15).

On December 14, 2006, Express instructed ABM to cease all marketing activities

---

[1] The Agreement in this case was originally signed by Express and Isabella Helena, Inc., but Isabella Helena, Inc. assigned its rights and responsibilities under the contract to ABM. Plaintiff attached the original independent contractor agreement (DE # 1, Ex. 1) and the assignment (DE # 1, Ex. 2) to its complaint.

pursuant to the Agreement (DE # 1 at ¶ 17). ABM alleges that since that time, Express has failed to fully compensate ABM for New Customers solicited by ABM prior to December 14, 2006, who subsequently subscribed to Express' debt consolidation program (DE # 1 at ¶ 18).

On January 26, 2007, the court in the FTC action entered a Stipulated Interim Order enjoining Express from further violations of the above laws, and requiring Express to place all monthly customer fees in excess of $35 in a special account for the benefit of customers (DE # 1 at ¶ 16).

ABM alleges that on February 13, 2007, Express purported to terminate its Agreement with ABM (DE # 1 at ¶ 20).[2]

The Agreement, which is attached to the Complaint, contains two provisions with respect to termination–paragraph 10, entitled "Termination," and paragraph 25, entitled "Change of Law." The February 13, 2007 letter of termination expressly relied upon both paragraphs (DE # 10, Ex. 5). Since these provisions are critical to the resolution of the Motion to Dismiss, they are set forth below in their entirety.

Paragraph 10 states:

> 10. <u>Termination</u>:
>
> 10.1  [Express] shall have the right to terminate this

---

[2]  Although the Complaint refers to the February 13, 2007 letter of termination, it is not attached to the Complaint. Defendant Express has attached a copy of the letter as Exhibit 5 to its Motion to Dismiss. The authenticity of this letter has not been disputed. Where a Complaint refers to documents that are central to the case, those documents may considered part of the pleading. Therefore, this letter, as well as the Agreement which is attached to the Complaint, can be considered in connection with the Motion to Dismiss. *See Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n. 2 (11th Cir.1999)); *Jordan v. Miami-Dade County*, 439 F. Supp. 2d 1237, 1240 (S.D. Fla. 2006).

>Agreement for "for cause", effective upon written notice to [ABM]. For the purpose of this Agreement "cause" shall include:
>
>>10.1.1 conviction of a crime involving moral turpitude; or
>>
>>10.1.2 an act of dishonesty involving [ABM's] services rendered hereunder; or,
>>
>>10.1.3 [ABM's] incompetence or mismanagement or other gross and willful neglect or failure to perform the duties described in Paragraph 2 hereof.
>
>>10.2  Except as otherwise provided herein, this Agreement may be terminated in the following manner upon the following events;
>
>>>10.2.1 by the mutual agreement of the parties hereto; or
>>>
>>>10.2.2 by [Express] upon the failure of the [ABM] or its designated representative to take the initial training course; or
>>>
>>>10.2.3 upon [ABM's] death, bankruptcy, insolvency; or
>>>
>>>10.2.4 upon thirty (30) days prior written notice by either [Express] or [ABM] or its designated representative to the other.
>
>>10.3  Upon termination of this Agreement, [Express] shall pay [ABM] all compensation due [ABM] through and including the effective date of such termination, except for any set-off due to the indemnity provisions as hereinafter set forth.  Provided, however, that any compensation due from the monthly administrative fee, pursuant to paragraph 5.6 hereinabove,[3] shall continue to be paid as long as the customers provided by [ABM] remain in the program, subject to the indemnity provisions referenced above.

(DE # 1, Ex. 1).

In addition, paragraph 25 also provides a mechanism for terminating the

Agreement, and reads, in its entirety:

---

[3]  **Paragraph 5.6 governs the payment of residual fees.  It provides for the payment to ABM of $15 (later increased to $17) from the monthly payments made by clients to Express.  It also provides that if "State or Federal law, or other circumstances, require a monthly fee of $20 or less, [Express] shall pay ABM 39% of the monthly fee."**

> 25.  <u>Change of Law</u>: If the Corporation's legal counsel or accountant determines that payments or reimbursements to [ABM], or the ability of the parties hereto to fulfill their obligations hereunder are (or are likely to be) adversely impacted by any federal, state or local law, rules regulations, substantial change in economic circumstances, or published official interpretation of any of the foregoing, as applied to the Agreement, then, at the option of [Express], the parties shall negotiate in good faith to amend the Agreement in a manner which will, if possible, avoid such adverse impact while maintaining the essential economic benefits intended to be conferred hereby.  If the Agreement is not so amended within thirty (30) days after [Express'] notice to negotiate under this Section then the Agreement may be terminated by [Express].

(DE # 1, Ex. 1).

In Count 1 of the Complaint, ABM alleges that Express breached the above Agreement "by failing to fully compensate ABM for its services pursuant to the Agreement" (DE # 1 at ¶ 24).  ABM seeks a judgment for compensatory damages, including lost profits and lost business opportunities (DE # 1 at 5).

Count 2 of the Complaint is pled as an alternative count for Unjust Enrichment (DE # 1 at 6).  In this Count, ABM alleges that it has conferred benefits on Express, including the procurement of customers who have enrolled in Express' debt consolidation services; that Express requested and accepted these benefits; and that, under the circumstances it would be inequitable for Express to retain these benefits without paying the value of them (DE # 1 at ¶¶ 27-30).  ABM seeks a judgment for the reasonable value of these benefits (DE # 1 at 6).

In Count 3 of the Complaint, ABM seeks an accounting (DE # 1 at 6).  ABM alleges that the Agreement required Express to pay ABM a fee for all customers directed to Express who ultimately enrolled in the program, and residual fees for customers who remained with the program (DE # 1 at ¶ 32).  Each week prior to January 25, 2007, Express provided an accounting of these new and residual customers before wiring

payment to ABM; however, since that date, Express has not provided ABM with such an accounting (DE # 1 at ¶¶ 33-34). Express has failed to provide an accounting of new customers since January 25, 2007, and an accounting of residual customers since February 5, 2007 (DE # 1 at ¶ 34). ABM alleges that Express acts in a fiduciary capacity to ABM, which relied on Express to provide accurate accounts of New Customers and Residual Customers on a weekly basis; and, that an accounting is necessary because the accounts involved are complicated and numerous, involving the identification and status of thousands of customers (DE # 1 at ¶¶ 36-37). ABM therefore requests the court to order an accounting of all new customers procured by ABM for Express; an accounting of all residual customers, including if and when they ceased being customers; and an ongoing accounting (DE # 1 at 7).

In Count 4 of the Complaint, ABM seeks the imposition of a constructive trust. ABM alleges that the Agreement identified a particular fund to be set aside from each payment made by the customers of Express. ABM alleges that "Express acts in a confidential and fiduciary capacity to ABM, which relied on Express to provide accurate accounts of New Customers and Residual Customers on a weekly basis and pay the monies earned by ABM under the Agreement" (DE # 1 at ¶ 41). Specifically, for each initial payment made by a client referred by ABM, ABM was to receive $310; for each residual payment, ABM was to receive $17 (DE # 1 at ¶ 39). ABM alleges that Express has failed to make these payments and has therefore acquired funds which it should not in equity and good conscience retain (DE # 1 at ¶ 40). ABM further alleges that these funds are held in a specifically identifiable bank account (DE # 1 at ¶ 40). ABM seeks the entry of a preliminary injunction imposing a constructive trust over the funds owed to ABM, and requiring that the funds be transferred to an escrow account until the Court

issues an order regarding the proper disbursement of the funds (DE # 1 at 8).

## II.     THE MOTION TO DISMISS

### A.     Framework for Analysis

Under Rule 12(b)(6), dismissal of a claim is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir. 1994) (*quoting Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). On a motion to dismiss, the Court must accept as true all facts alleged and draw all inferences therefrom in the light most favorable to the non-moving party. *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006)*; St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002); *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). A very low sufficiency threshold is necessary for a complaint, or counterclaim, to survive a motion to dismiss. *See Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (citation omitted). Moreover, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 46 (1957)); *M/V Sea Lion v. v. Reyes*, 23 F.3d 345, 347 (11th Cir. 1994).

It is generally true that a court reviewing a motion to dismiss is limited to the four corners of the complaint.  *See Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006).  If, however, the complaint refers to documents that are central to the case, those documents may be considered part of the pleading.  *See Jordan v. Miami-Dade County*, 439 F. Supp. 2d 1237, 1240 (S.D. Fla. 2006).  Similarly, courts may consider any document attached to a motion to dismiss without treating the motion as one for

summary judgment so long as the plaintiff has referred to the document in its complaint, the document is "central" to the claims and the authenticity of the document is unchallenged.  *See Bickley*, 461 F.3d at 1329 n.7; *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n. 2 (11th Cir. 1999)).  Thus, where a plaintiff attaches a contract as an exhibit to a complaint and that contract "shows unambiguously on its face that the relief prayed for is not merited, then dismissal is appropriate."  *Jacksonville Newspaper Printing Pressmen and Assistants' Union No. 57 v. Fla. Publishing Co.*, 340 F. Supp. 993, 995 (S.D. Fla. 1972).

        B.        <u>The Positions of the Parties</u>

Defendant Express contends that the Breach of Contract claim in Count 1 should be dismissed because, as matter of law, Express properly terminated the Agreement with ABM pursuant to paragraph 25 based upon the parties' failure to negotiate an amendment that would avoid the adverse impact on Express resulting from the FTC's civil action; and, the claim in Count 2 for unjust enrichment should be dismissed because Florida law does not allow a party to seek relief under an implied contract where an express contract exists.  In addition to the terms of the contract and the termination letter, Defendant Express relies upon the Declaration of its principal, Randall Leshin, concerning the events surrounding the FTC lawsuit and the subsequent negotiations with Plaintiff to amend the agreement.[4]

Defendant Express further contends that once Counts 1 and 2 are dismissed, the claim in Count 3 for an accounting and the claim in Count 4 for a constructive trust must

---

[4] Defendant Express notes that if the Court considers matters outside the four corners of the Complaint, it may convert the motion to dismiss into a motion for summary judgment (DE # 10 at 1 n.1).  Plaintiff ABM objects to this conversion, and the undersigned declines to convert the motion.

be dismissed since those counts are predicated on entitlement to relief under Counts 1 and 2 (DE # 10 at 1-2).

In response, Plaintiff ABM argues initially that Defendant Express has improperly relied upon matters outside the Complaint to support its motion to dismiss, and objects to the consideration of those facts at this stage of the proceedings.  ABM also argues that there are disputed issues of fact concerning whether the termination was proper under paragraph 25 due to a change in law or economic circumstances; and, that under the terms of the contract, even where there is a valid termination under paragraph 25, ABM remains entitled to Residual Fees as provided in the general termination provision contained in paragraph 10.3.   Thus, ABM contends that the breach of contract claim should not be dismissed (DE # 10 at 3-5).  In its Reply, Express states that it is not necessary to go beyond the four corners of the Complaint to hold that there was a valid termination under paragraph 25 of the Agreement, and that the Agreement is clear that the post-termination residual fees are only payable if the Agreement is terminated under paragraph 10 (DE # 17).

With respect to the claim for unjust enrichment in Count 2, ABM contends that this is an alternative claim which is permitted in the event that there is a determination that the contract does not govern ABM's claim for residual fees after a termination under paragraph 25 (DE # 10 at 5-6).

Finally, ABM argues that since both Count 1 and Count 2 remain viable, there is no basis for dismissal of Counts 3 and 4 (DE # 10 at 6-7).

    C.    <u>Count 1 – The Breach of Contract Claim</u>

Defendant Express contends that, based upon the nature of the termination, ABM is no longer entitled to receive residual fees, and that therefore it did not breach the

contract by failing to pay the residual fees.[5]  Express relies upon the explicit terms of paragraph 25 of the Agreement with respect to termination to support its contention that, as a matter of law, ABM cannot prevail and the breach of contract claim must be dismissed.

ABM and Express disagree over whether the FTC action was the type of "adverse" event presaged by paragraph 25 of the Agreement.  Express insists that it was, and, after negotiating for more than thirty days, it was within its rights to terminate the Agreement pursuant to paragraph 25 (DE # 10 at 7).  ABM responds generally that "[w]hether Express had a basis to terminate the Agreement under Section 25 is disputed by the parties and should not be determined at the Motion to Dismiss stage," and that, in any event, Express invited the adverse consequences that arose as a result of the FTC action and "cannot rely on conditions that it created to terminate the Agreement under Section 25" (DE # 15 at 4).

Even assuming that the FTC action was an "adverse" event, ABM argues, Express still breached paragraph 25 by failing to negotiate for thirty days to amend the Agreement before terminating it (DE # 15 at 3).

Finally, ABM argues that even if Express rightfully terminated the Agreement pursuant to paragraph 25, it nevertheless violated paragraph 10.3, which required Express,

> [u]pon termination of this Agreement, [to] pay [ABM] all compensation due [ABM] through and including the effective date of such termination, except for

---

[5]  Although the Complaint alleges that ABM did not receive initial fees for certain customers, neither party has addressed this aspect of the Complaint in connection with the pending motion to dismiss.  ABM did not rely upon this claim to support the viability of its Complaint; but only relied upon its interpretation of the Agreement with respect to residual fees.

> any set-off due to the indemnity provisions as hereinafter set forth. Provided, however, that any compensation due from the monthly administrative fee, pursuant to paragraph 5.6 hereinabove, shall continue to be paid so long as the customers provided by [ABM] remain in the program, subject to the indemnity provisions referenced above.

(DE # 1, Ex. 1). In essence, regardless of how the Agreement was terminated, ABM asserts that it has an actionable claim against Express for failing to pay the contractually-mandated post-termination fees under paragraph 10.3.

Express, on the other hand, argues that the post-termination fee provisions of paragraph 10.3 apply only in the event of one of the enumerated "for cause" terminations listed in paragraph 10, and that the Agreement imposes no duty upon Express to pay any post-termination fees in the event the Agreement is terminated pursuant to paragraph 25. Express points out that, in light of the fact that paragraph 10 permits Express to terminate the Agreement for any reason upon thirty days notice, the only way to interpret the Agreement without effectively eviscerating paragraph 25 is to conclude that paragraph 25 is intended to allow Express to terminate the Agreement without incurring the obligation to pay post-termination fees (DE # 17 at 6-7).

ABM has cleared the low barrier to survive Express' motion to dismiss its breach of contract claim. The Agreement simply does not show "unambiguously on its face" that ABM is foreclosed from recovering under the contract. *Jacksonville Newspaper* 340 F. Supp. at 995.

ABM's contention that the FTC action did not constitute an "adverse" event as the is a matter that is dependent on the facts of the case. The undersigned rejects the contention of Express that, as a matter of law, the FTC's actions constituted an "adverse" event. The Court is limited, as stated above, in its consideration of the facts, and the present record does not establish that Defendant Express' legal counsel or

accountant made the determination required to trigger termination under paragraph 25, or that such determination was made in good faith.[6]  Nevertheless, the resolution of that question may be left for another day because ABM argues that even if the FTC was an adverse event, Express breached paragraph 25 by failing to comply with the termination protocol contained therein.

The genuine factual dispute concerning the thirty-day negotiation period also precludes this Court from granting a motion to dismiss.  Assuming that the February 2007 letter offered by Express to prove that it negotiated for at least thirty days before terminating the contract is properly before this Court on a motion to dismiss, the letter, at best, gives rise to a dispute between Express' perception of events and those alleged in the complaint, which suggest that termination occurred immediately after the FTC action in December 2006 (DE #1 at 4-5, ¶ 17).[7]  It does not, however, establish that

---

[6]  In this regard, the undersigned notes that paragraph 5.6 of the Agreement envisions a scenario under which state or federal law may mandate a reduction in administrative fees that Express is permitted to collect from its clients, and expressly provides that if the monthly fee is reduced to $20 or less, Express is required to pay ABM only 39% of the monthly fee.  Therefore, it appears that the undisputed reduction in the monthly fee to $35 as a result of the FTC Complaint could not alone form the basis for a good faith termination under paragraph 25.  It is not clear whether the other facts, which are not included in the Complaint, rise to the level of an adverse circumstance.

[7]  It should be noted that it is not at all clear that ABM intends to allege that Express breached the Agreement by prematurely terminating it on December 14, 2006.  One reasonable interpretation of the complaint is that Express merely "instructed ABM to cease all marketing activities" on that date, but otherwise continued to conduct itself in conformity with the Agreement until it sent ABM a formal notice of termination in the February 2007 letter.  Such a reading is not facially inconsistent with the complaint, which does not allege that Express ceased remitting all payments due under the contract on December 14, 2006, but merely that "Express has failed to fully compensate ABM" since that time.  ABM's Response does nothing to clarify its inchoate allegation that Express breached the Agreement by terminating it in advance of a thirty-day negotiation period (DE # 15 at 3).  However, on a motion to dismiss, this Court is required to draw all reasonable inferences in ABM's favor, and under this forgiving standard, ABM has fairly alleged that Express breached the Agreement by terminating it in December 2006

termination under paragraph 25 was properly made.

Finally, ABM claims that even if the FTC action entitled Express to terminate the Agreement under paragraph 25 and even if Express properly terminated the Agreement following thirty days of negotiation, the failure of Express to pay the post-termination Residual Fees constitutes a breach of paragraph 10.3 of the parties' Agreement.

It is unnecessary to reach this argument since the undersigned has determined that the allegations of the Complaint are sufficient to establish a breach even assuming that proper invocation of paragraph 25 would relieve Express of its obligations to make residual payments. However, the undersigned notes that Express has raised a forceful argument that paragraph 10.3, which establishes ABM's right to collect post-termination Residual Fees applies only when the Agreement is terminated pursuant to paragraph 10, but not in a case like this, where the Agreement was terminated pursuant to paragraph 25. Express argues that paragraph 10 permits it to terminate the Agreement for any reason so long as it provides "thirty (30) days prior written notice" to ABM (DE #1, Ex. 1 at ¶ 10.2.4). According to Express' argument, if it believed it had grounds to terminate the Agreement under paragraph 25, it just as well could have terminated the Agreement under paragraph 10, and therefore, the only reason why it would bother to go through the more cumbersome process of terminating the Agreement under paragraph 25 – which required thirty days of negotiation – as opposed to paragraph 10 – which simply required thirty days' written notice – would be to avoid the obligation to pay the post-termination Residual Fees that ABM now claims it is entitled to collect in any event.

---

without attempting to forge an amended agreement through good-faith negotiations, as required under paragraph 25. *See Stephens v. Dep't of Health and Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).

Adopting ABM's position, Express argues, would render paragraph 25 a nullity, an impermissible outcome that renders ABM's claim insufficient as a matter of law.

In order to prevail on this point, Express must establish that, but for its exemption from having to pay post-termination Residual Fees to ABM, Express would receive no other benefit by terminating the Agreement under paragraph 25 as opposed to paragraph 10. It is arguable, however, that paragraph 25 can be interpreted to serve another purpose. It permits Express to require ABM to negotiate in good faith to reach a new agreement if the conditions in paragraph 25 are met. Without paragraph 25, Express would only have the two options of (1) terminating the Agreement, or (2) continuing the Agreement on its existing terms. If invoked by Express, Paragraph 25 provides an additional mandatory negotiation option.

Ultimately, for the reasons stated above, the undersigned concludes that it is not necessary to reach this issue in the context of a motion to dismiss. At the very least, ABM has stated a valid claim capable of surviving a motion to dismiss based on ABM's contention that Express failed to comply with the pre-termination requirements contained within paragraph 25 of the Agreement.

In sum, the Complaint expressly alleges that Express breached the Agreement by failing to pay residual fees for clients procured by ABM. The undersigned cannot say that there is no set of facts under which ABM could prevail. Therefore, the motion to dismiss this claim should be denied.

### D. The Unjust Enrichment Claim

To establish a claim for unjust enrichment, Plaintiffs must establish that (1) Plaintiff ABM conferred a benefit upon Defendant Express, (2) Express was aware of and accepted that benefit, and (3) it would be inequitable for Express to retain the benefit

-14-

without paying for it.  *Nova Information Systems, Inc. v. Greenwich Insurance Co.*, 365 F.3d 996, 1006 (11th Cir. 2004); *Shands Teaching Hosp. and Clinics, Inc. v. Beech Street Corp.*, 899 So. 2d 122, 1227 (Fla. Dist. Ct. App. 2005).

ABM concedes that, under Florida law, unjust enrichment claims cannot be pled alongside breach of contract actions where the parties do not dispute that an express contract governs the subject matter of the claim (DE # 15 at 5-6) (citing *In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337-38 (S.D. Fla. 2002)).  Since Express has "essentially argue[d] that there is no binding [a]greement in effect that would govern ABM's claim for unpaid [post-termination] fees," ABM argues that it is therefore entitled to alternatively plead that it is entitled to those fees pursuant to an unjust enrichment theory (DE # 15 at 6).  Express insists that there is no disagreement over whether a contract governs this dispute, but merely that ABM is not entitled to recover under the terms of that contract.  Thus, according to Express, ABM is barred from asserting an unjust enrichment claim where, as here, an express contract applies to the legal claims at issue (DE # 10 at 12).

The undersigned concludes that at this stage of the proceedings, it is appropriate to permit ABM's claim for recovery under the alternative theory of unjust enrichment to stand.  Both federal and Florida law permit pleading in the alternative.  *Donnelly v. Circuit City Stores, Inc.*, 2007 WL 896337, No. 5:06-cv-387-Oc-10GRJ, slip op. at *3 (M.D. Fla. Mar. 22, 2007) ("alternative pleading allows for a plaintiff's case to proceed in the face of uncertainty as to whether the particular issue at hand falls within the ambit of a contract that otherwise exists between the parties"); *Shibata v. Lim*, 133 F. Supp.2d 1311, 1316-17 (M.D. Fla. 2000).  There has been no Answer filed in this case, and therefore Defendant Express has not yet formally bound itself to a legal position

regarding the existence of a contract or the existence of affirmative defenses which may impact on the viability of the claim for unjust enrichment. Assuming that Defendant Express is correct that the contract was terminated under Paragraph 25, which contains no provision for the payment of residual fees, and that Defendant Express also prevails in its contention that paragraph 10 does not apply to this situation, Plaintiff may be entitled to recovery of some amount of money based on the theory of unjust enrichment since the continuing receipt of residual fees would not be covered by the contract. Neither party has presented or argued any cases involving this situation. Thus, permitting the alternatively pled Count to remain in the case is appropriate at this stage of the litigation, without prejudice to renew this argument at the summary judgment or trial stage of the litigation.

### E. The Accounting and Constructive Trust Claims

Express argues that, because ABM has failed to state a claim for breach of contract or unjust enrichment, its accounting (Count 3) and constructive trust (Count 4) claims must be dismissed as well (DE # 10 at 13). Predictably, ABM has countered that because it has alleged valid claims for breach of contract and unjust enrichment, its accounting and constructive trust claims must stand as well (DE # 15 at 6-7). Neither party addressed the substantive merits (or lack thereof) of ABM's constructive trust or accounting claims in the event the motion to dismiss at bar is denied as to one of the substantive counts. Therefore, since the only basis urged for dismissal of counts 3 and 4 is that they cannot stand if the substantive counts are dismissed, the undersigned recommends that the motion be denied as to these counts as well.[8]

---

[8] The undersigned notes, however, that although not raised by Defendant, it is not a foregone conclusion that these counts survive merely because the substantive

IV.     CONCLUSION

Therefore, based upon the foregoing analysis, the undersigned hereby

**RECOMMENDS** that the Motion to Dismiss be **DENIED**.

The parties will have ten days from the date of service of this Order within which

---

counts survive. However, in the case at bar, it appears that the elements for each of these claims has been sufficiently alleged, which is probably why Defendant did not separately challenge their viability.

As the Eleventh Circuit has explained, "[u]nder Florida law, a party that seeks an equitable accounting must show that: 1) the parties share a fiduciary relationship or that the questioned transactions are complex, and 2) a remedy at law is inadequate." *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1071 (11th Cir. 2007). ABM has clearly satisfied the first element by clearly alleging both a fiduciary relationship and the existence of complex transactions (DE # 1 at 7, ¶¶ 36-37). The well-pled allegations of the complaint are sufficient to withstand a motion to dismiss.

Under Florida law, a party moving for a constructive trust must ordinarily prove four elements, namely: (1) an express or implied promise, (2) which caused a transfer of property (3) by exploiting a confidential relationship and (4) resulted in an unjust enrichment to the responsible party. *See In re Cameron*, 359 B.R. 818, 822 (Bankr. M.D. Fla. 2006). Although cases imposing constructive trusts on facts similar to those alleged in the case at bar are few and far between, unpaid commission fees have indeed been the subject of constructive trusts in some cases applying Florida law. *See Riverland and Indian Sun, L.C. v. L.J. Melody & Co.*, 879 So. 2d 1271 (Fla. 3d DCA 2004); *Campbell v. Pace*, 369 So. 2d 413 (Fla. 3d DCA 1979). In *Campbell*, for example, real estate brokers were entitled to receive "their commission from . . . the principal payments made on the purchase price of the property" and therefore made the seller a constructive trustee of the portion of the sale price that he owed as a commission to the brokers. 369 So.2d at 414.

At this stage, the Court must limit its gaze the four corners of the complaint, and interpret the allegations therein in the light most favorable to ABM. Under that liberal standard, ABM has alleged a claim of ownership to an identifiable portion of the customer fees deposited in Express' coffers (DE # 1 at 3, ¶ 9) ("Express . . . agreed to pay ABM $15 out of each [$39 to $49 monthly] payment made by" customers referred through ABM's telemarketing services). While Express may introduce facts and arguments to establish that ABM is merely a general creditor of Express, ABM's well-pled allegations offer no basis upon which to distinguish its claim to residual payments from the plaintiff's claim to commission fees that supported the imposition of a constructive trust in *Campbell*. *Id*. at 414-15.

-17-

to file written objections, if any, for consideration by the United States District Judge to whom this case is assigned.  Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein.  *LoConte v. Dugger*, 847 F.2d 745 (11th Cir.), *cert. denied*, 488 U.S. 958 (1988); *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND SUBMITTED** in Miami, Florida, this 3rd day of March, 2008.

ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

**Copies to:**
The Honorable Federico A. Moreno, Chief United States District Judge
All counsel of record via CM/ECF