UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-60294-MORENO/SIMONTON

ABM FINANCIAL SERVICES, INC.,

    Plaintiff,

v.

EXPRESS CONSOLIDATION, INC.,

    Defendant.
_____/

## ORDER

This matter is before the Court on the Motion to Compel Production of Documents (DE # 46)[1] and the Motion to Compel Responses to First Set of Interrogatories (DE # 61),[2] filed by Defendant, Express Consolidation, Inc.  The Honorable Federico A. Moreno, Chief United States District Judge, has referred all pretrial matters to the undersigned Magistrate Judge (DE # 16).  After reviewing the record and for the reasons stated herein, it is **ORDERED** that Defendant's motions be **GRANTED**.

I.     BACKGROUND

    A.     ABM's Complaint

This cause arose when Plaintiff, ABM Financial Services, Inc. ("ABM"), sued Defendant, Express Consolidation, Inc. ("Express") for breach of contract and unjust enrichment.  ABM was hired by Express to conduct telemarketing on behalf of Express' debt consolidation services.

The parties agree that their contract was terminated after Express was sued by

---

[1] This motion is fully briefed (DE ## 50 & 55).

[2] This motion is fully briefed (DE ## 71 & 80).

the Federal Trade Commission ("FTC") for wrongfully claiming to be a "non-profit" entity. Express claimed that the FTC action was brought about, at least in part, as a result of ABM's independent wrongful conduct while marketing Express' services.

ABM's complaint concerns the fees that Express continues to collect from customers who were attracted to Express by virtue of ABM's telemarketing. ABM claims that it is entitled to collect a portion of those fees, even after the termination of the contract, and sued for breach of contract and unjust enrichment. Among other relief, ABM requests this Court to impose a constructive trust over the disputed funds.

      B.    <u>Express' Answer and Counterclaim</u>

Express recently filed an answer and affirmative defenses to the complaint, as well as a counterclaim against ABM (DE # 85). Therefore, to the extent that discovery was resisted on the grounds that it was not relevant to the claims presented in the complaint; and was premature to the extent that it would only be relevant to not-yet-filed affirmative defenses and counterclaims, those objections are moot.

The answer and counterclaim contain allegations that are consistent with the representations Express made in support of its motions to compel and, thus, Express' discovery requests which it argued were relevant in light of its likely claims and defenses are applicable with respect to its recent answer and counterclaim that encompass those claims and defenses.

Among other things, Express claims that ABM breached the contract and committed illegal acts that gave rise to the FTC Action and, therefore, ABM is liable for damages caused to Express; that Express is not liable to ABM; and, that any damages ABM would otherwise be entitled to recover are offset by the damages it has caused.

**C. The Instant Motions**

Prior to filing its answer and counterclaim, Express sought, and ABM resisted, the production of following categories of discovery materials, which are the subject of Defendant's Motion to Compel (DE # 46):[3]

1. Request Nos. 11-16, which seek various financial documents for the period between June 2003 and the present;[4]

2. Request Nos. 17-19, which seek various documents pertaining to ABM's telephone billing records for the period between June 2003 and the present;[5]

3. Request Nos. 22-24, which seek all documents relating to the telephone dialing software (Request No. 22) and telephone dialing licenses (Request No. 23) that ABM or any agent of ABM used in connection with telemarketing conducted on Express' behalf, including any receipts or

---

[3] The undersigned notes that it is unclear whether Express has abandoned its motion to compel the production of Request No. 14. Even though it was clearly raised in both Express' motion to compel and ABM's response, it was conspicuously absent from Express' reply. For example, a main heading in the reply brief states in bold and underlined print, that "ABM should be Ordered to Produce Request Nos. 11-13, 15-16." And, in the introductory paragraph of that section, Express states that it "stands by its factual and legal arguments as to Request Nos. 11, 12, 13, 15 and 16." In light of the fact that Express was not required to file a reply at all, *see* S.D. Fla. L.R. 7.1(B), the Court will consider the merits of Request No. 14.

[4] These requests include: ABM's federal and state tax returns and any attachments thereto (Request No. 11); ABM's financial statements and notes thereto, including any balance sheets, cash flows income statements and trial balances (Request No. 12); ABM's accounting journals (Request No. 13); ABM's general ledgers (Request No. 14); ABM's bank statements (Request No. 15); and any other documents regarding ABM's profits and losses (Request No. 16).

[5] These requests include: all dialing records for phone solicitations made by ABM or its agents (Request No. 17); all of ABM's phone records (Request No. 18); and all of ABM's telephone bills, invoices and billing statements (Request No. 19).

    proofs of purchase pertaining to any telephone dialing software (Request No. 24); and

  4. Request Nos. 35, 38, 40, 44 and 51, which seek materials relating to the allegations contained in ABM's trial documents.[6]

Express also sought, and ABM did not respond to, the following interrogatories, which are the subject of Defendant's Motion on Interrogatories (DE # 61):

  1. Interrogatory No. 7, which asks ABM to identify any software used by ABM or its agents in connection with telemarketing that it conducted on Express' behalf from June 2003 to the present, including the name of the software, the date it was purchased; the person or entity that purchased it and the time period in which it was used.

  2. Interrogatory No. 16, which asks ABM to identify any telephone dialing licenses used by ABM or its agents in connection with telemarketing it conducted on Express behalf from June 2003 to the present.

### III. THE MOTION TO COMPEL PRODUCTION OF DOCUMENTS

  A. Timeliness

ABM argues that the instant motion is untimely because ABM served its responses to Express' requests for production on October 27, 2007, which would have required Express to file its motion to compel by November 26, 2007. *See* S.D. Fla. L.R.

---

[6] These requests include all documents pertaining to damages that ABM seeks in its complaint (Request No. 35); all documents pertaining to the allegations contained in paragraphs 11, 13 and 24 of ABM's complaint (Request Nos. 38, 40, and 44, respectively); all documents pertaining to ABM's contention in its reply in support of its motion for a constructive trust, that Express advanced ABM approximately $55,000, which ABM paid back to Express at a rate of $5 for each New Customer solicited each month" (Request No. 51).

26.1.H.1 ("All motions related to discovery, including but not limited to motions to compel discovery . . ., shall be filed within thirty days of the occurrence of the grounds for the motion.  Failure to file discovery motion within thirty days, absent a showing of reasonable cause for a later filing, may constitute a waiver of the relief sought.").  ABM argues that because Express did not file this motion until December 6, 2007, without demonstrating reasonable cause for the late filing, it waived its right to seek any relief (DE # 50 at 3-4).

Express suggests, implicitly, that grounds for the motion did not arise until Mike Jones' November 20, 2007 deposition, and contends, expressly, that its attempts to resolve this matter without requiring the Court's intervention constitute reasonable cause for its noncompliance with Local Rule 26.1.H.  Specifically, Express asserts that it sent a detailed letter to ABM on November 26, 2007 regarding ABM's objections to its request for production and ABM requested until December 1, 2007 to address the issues raised in Express' correspondence.  Thus, according to Express, it was justified in waiting to file the present motion to compel on December 6, 2007.

The Court finds that the parties' attempts to reach a negotiated resolution to their discovery dispute constitutes reasonable cause for the untimely filing of the instant motion.  It appears that Mike Jones' testimony at his November 20, 2007 deposition led Express to believe that ABM might cede at least some of its discovery objections, and that waiting to file a discovery motion for ten days while it conferred with opposing counsel might obviate the need to file a motion to compel.  The Court will therefore consider the merits of the pending motion.

### B.     Financial Records (Request Nos. 11-16)

#### 1.     The Parties' Positions

Express filed its motion to compel in the expectation that the requested materials would be relevant to the issues raised in its yet-to-be-filed answer and counterclaim (DE # 46).  *See Donahay v. Palm Beach Tours & Transp., Inc.*, 242 F.R.D. 685, 687 (S.D. Fla. 2007) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)) (holding that the definition of relevance "has been construed broadly to encompass any matter . . . that reasonably could lead to other matter that could bear on . . . any issue that <u>is or may be</u> in the case.") (emphasis added).  ABM argued in response that even if Express' discovery requests pertained to its then-putative counterclaim, documents relating to the financial state of a putative defendant are generally irrelevant and undiscoverable until a judgment has been obtained.  Because there was no indication that any unusual circumstances would pertain to the counterclaim (such as an allegation that the disputed funds were subject to a constructive trust), ABM contended that Express was not permitted to obtain discovery of ABM's financial records in advance of obtaining a judgment (DE # 50).  In its initial complaint, ABM alleged that it would suffer irreparable harm if a constructive trust was not imposed against Express' assets, which required Express to divulge its financial information in pre-judgment discovery proceedings.  Express, in turn, argued in its reply that ABM's financial data was relevant to Express' defense that ABM's claim that it is entitled to a preliminary injunction imposing a constructive trust because it would suffer irreparable injury without one (DE # 55).

#### 2.     Analysis

Notwithstanding the fact that Express had not filed its counterclaim at the time these issues were briefed, ABM's financial records are – and were – discoverable

**because it had been clear for many months that Express intended to assert a counterclaim against ABM, and because the financial information Express requested falls within the Federal Rules' broad definition of relevance because they are "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b).**

**ABM insists that the Court should distinguish its request to discover Express' financial data from Express' request to discover ABM's financial data. ABM points out that its requests for financial data were tied very closely to its constructive trust claim while Express' requests for financial data are not as closely linked to any of Express' claims or defenses. The definition of relevance does not call for the sort of comparison that ABM proposes. It is sufficient that ABM's financial records are reasonably calculated to support Express' affirmative defenses and counterclaims by providing evidence of ABM's breach of its contractual obligations, and that is all the Federal Rules require.  See *Donahay*, 242 F.R.D. at 687 ("Discovery is not limited to the issues raised by the pleadings because 'discovery itself is designed to help define and clarify the issues.'") (citing *Oppenheimer*, 437 U.S. at 352).**

**Although the relevance of these discovery requests was not dependent on Express' actual filing of the counterclaim, the Court notes that Express' recent pleadings do, in fact, contain allegations relating to ABM's breach of its contractual obligations that may be borne out in its financial records, which only bolsters Express' argument that Request Nos. 11-16 are relevant and discoverable.[7]**

---

[7] **It is not necessary to address Express' secondary argument, which is unpersuasive. First, Express' motion to compel was so clearly focused on the relevance of the information as it related to its forthcoming answer and counterclaim that ABM was not likely apprised that Express intended to argue that the information was also relevant**

### C. Telephone Records (Request Nos. 17-19)

#### 1. The Parties' Positions

ABM argues that Express' requests for the dialing records for telemarketing conducted on Express' behalf (Request No. 17); all of ABM's telephone records (Request No. 18); and all of ABM's telephone bills (Request No. 19) are irrelevant because ABM is entitled to collect residual fees under the contract even if it was terminated "for cause," based on ABM's own wrongdoing. ABM also contends that Request Nos. 17-18 are unduly burdensome to produce, based on the deposition testimony of its corporate representative, which established that ABM made between one to six million telemarketing calls on Express' behalf each day; that the dialing records requested would take up 20 DVDs in electronic form; and that they would fill six conference-sized rooms if printed in their entirety.

Express replies that Request Nos. 17-19 are relevant because it has asserted, in an affirmative defense, that ABM breached the contract under which ABM now seeks to recover by making telemarketing calls to individuals in states that instituted Do Not Call lists and/or by failing to call potential customers pursuant to the terms of the contract. Express has also stated that, due to the volume of materials that are responsive to Request Nos. 17-18, it is willing to "accept summaries [which] specifically identify[ ] how many calls were made to each state during each month" from 2003 until ABM ceased

---

to rebut the assertions made in ABM's request for a preliminary injunction. Second, even if the argument was properly raised, it is unavailing because ABM argued that Express' alleged dissipation of assets subject to a constructive trust constitutes irreparable injury as a matter of law (DE # 43 at 9-11). Therefore, because ABM does not contend that its irreparable injury is the sort that requires factual proof of loss to ABM specifically but merely requires proof that the funds subject to a constructive trust are being dissipated, Express is not entitled to the discovery it requests on these grounds.

telemarketing on Express' behalf (DE # 46 at 10).

  2. Analysis

The parties dispute whether ABM's own breach of the contract constitutes an affirmative defense that is available to Express and whether Express is entitled to set off any potential recovery based on ABM's duty to indemnify it for certain losses Express incurs as a consequence of ABM's telemarketing activities. Express is entitled to discover material that is relevant to its assertion that ABM made unapproved calls to individuals in states that instituted Do Not Call Lists. ABM must therefore respond to Request Nos. 17-19.

In light of ABM's argument that producing all of its dialing records and telephone records for telemarketing claims that it made on Express' behalf would be unduly burdensome, this Court's finds Express' compromise position to be reasonable. In response to Request Nos. 17-18, ABM is required to produce a month-by-month summary of phone calls it made on Express' behalf beginning in 2003, and indicate the number of calls placed to individuals or entities in each state.

  D. Telephone Dialing Software and Licenses (Request Nos. 22-24)

    1. The Parties Positions

Similar to its position with regard to Request Nos. 17-19, ABM argues that documents relating to its telephone dialing software (Request No. 22), telephone dialing licenses (Request No. 23) and proof of payment for its telephone dialing software (Request No. 24) are all irrelevant, because ABM was entitled to the residual customer fees that it seeks even if Express' claims have merit and it was within its rights to terminate its contract with ABM "for cause" (DE # 55 at 6).

**2.     Analysis**

For the reasons stated above, ABM's alleged breach of the contract is relevant to Express' counterclaim, as well as the amount of damages ABM would be entitled to recover if it prevails in light of the indemnification provisions of the contract.  Prior to the actual filing of Express' answer and counterclaim, these documents were relevant because they pertained to issues that were likely to be raised; and, these documents are relevant based on the present state of the record which reflects that those issues have, in fact, been raised.  Express' claims that ABM failed to comply with its obligations under the contract and It is reasonably likely that the telemarketing software and licensing that ABM (and/or its agents) procured are relevant to those disputed matters.  Thus, Request Nos. 22-24 are discoverable.

**E.     Documents Supporting ABM's Claims (Request Nos. 35, 38, 40, 44 and 51)**

ABM's objection to each of the Express' remaining discovery requests (Request Nos. 35, 38, 40, 44 and 51) is that they are unduly burdensome, because the documents have already been produced by Express and that it is a wasteful exercise to require ABM to produce those same documents back to Express.

Although it is clear that the factual bases for ABM's substantive claims are relevant and would ordinarily be discoverable, this Court agrees that it would be pointless to compel ABM to produce documents that ABM itself received from Express in response to ABM's prior discovery requests.  However, there is no clear indication on the record that the documents that Express provided to ABM in the context of discovery are the only documents in ABM's possession or control that support the allegations enumerated above.

In other words, if ABM has any documents responsive to Request Nos. 35, 38, 40,

44 and 51 other than those that Express has produced in response to ABM's own discovery requests, it shall deliver those documents to Express. If, on the other hand, no such documents exist, ABM shall serve a notice that so states.

   F.   SANCTIONS

Although Express requested, in its motion to compel, that this Court impose sanctions upon ABM for failing to produce these discovery materials, Express informed the Court, in a notice filed on February 19, 2008, of its decision not to pursue sanctions against ABM in connection with the instant motion (DE # 78). Thus, based upon the parties' agreement, Express' motion for sanctions will be denied.

IV.   THE MOTION TO COMPEL RESPONSES TO INTERROGATORIES

   A.   Interrogatory No. 7

ABM has asserted that it has "fully answered Interrogatory No. 7," notwithstanding the fact that it is irrelevant (DE # 71 at 3-4). However, Express points out that ABM has only provided information relating to the software that ABM used, without providing any information relating to the software used by any of ABM's "agents, employees, contractors, sub-contractors or any entity acting on [its] behalf," as Express requested (DE # 80 at 1-3). Express has clarified that if ABM (through its three principals) is unaware of the software used by any of the persons or entities encompassed within the scope of its Interrogatory, it will accept a supplementary response to Interrogatory No. 7 which so states (DE # 80 at 4-5).

While ABM is not required to demand information from third parties that is outside of its possession or control to respond to Express' interrogatories, ABM is required to respond to Express' interrogatories based on its current knowledge; the fact that the interrogatory happens to request information pertaining to third parties does not

give ABM license to withhold facts that are otherwise responsive to Express' discovery requests. Thus, ABM must provide a complete response to Interrogatory No. 7 that includes any knowledge it has pertaining to the software used by third parties within the scope of the interrogatory. See *Catalina Rental Apts., Inc. v. Pacific Ins. Co.*, 2007 WL 917272 (S.D. Fla. 2007) ("The absence of knowledge is, by itself, a fact that may be relevant to the issues in a given case.").

    B.    <u>Interrogatory No. 16</u>

For reasons discussed in the context of similar discovery requests raised in the motion to compel production above, ABM contends that Interrogatory No. 16 – which asks ABM to identify any telephone dialing licenses ABM or its agents used in connection with conducting telemarketing on behalf of ABM – is irrelevant because, even if ABM failed to maintain its telemarketing licenses and Express had terminated ABM "for cause," ABM would nevertheless be entitled to its residual payments. Express responded that any losses occasioned by ABM's alleged failure to maintain any required licenses would be relevant to its indemnification affirmative defense, as well as its counterclaim.

The fact that Express chose to wait until the Court resolved ABM's motion to dismiss prior to filing its counterclaim did not transform its putative counterclaim into a vehicle of "harassment," as ABM suggested (DE # 71 at 4). Rather, any damages that ABM caused as a result of breaching the parties agreement were relevant to the likely claims and/or defenses in the instant proceedings at the time the motion was filed. *See Donahay v. Palm Beach Tours & Transp., Inc.*, 242 F.R.D. 685, 687 (S.D. Fla. 2007). Now that Express has filed its answer and counterclaim, it is clear that the requested discovery pertains to matters that are germane to these proceedings. ABM is therefore

required to respond to Interrogatory No. 16. Accordingly, it is hereby

**ORDERED** and **ADJUDGED** that:

    a.    Defendant's Motion to Compel (DE # 46) is **GRANTED** as follows:

        i.    On or before April 28, 2008, ABM shall deliver to Express all documents within its control or possession which are responsive to Request Nos. 11-16, 19 and 22-24.

        ii.    On or before April 28, 2008, ABM shall respond to Request Nos. 17-18 by delivering to Express a written summary of the number of calls it made into each state for each month that ABM conducted telemarketing on Express' behalf, beginning in 2003.

        iii.    On or before April 28, 2008, ABM shall either deliver to Express all documents within its control or possession which are responsive to Request Nos. 35, 38, 40, 44 and 51; or, if the only responsive documents within ABM's possession or control have been produced to ABM by Express in response to ABM's prior discovery requests ABM shall deliver to Express a written notice that so states.

    b.    Defendant's Motion for Sanctions (DE # 46) is **DENIED**.

    c.    Defendant's Motion on Interrogatories (DE # 61) is **GRANTED** as follows:

        i.    On or before April 28, 2008, ABM shall deliver to Express a supplemental response to Interrogatory No. 7 based on all facts known to the corporation or its principals.

  ii. On or before April 28, 2008, ABM shall deliver to Express an answer responsive to Interrogatory No. 16.

**DONE** and **ORDERED** in Chambers in Miami, Florida on April 17, 2008.

                 _/s/ Andrea M. Simonton_
                 **ANDREA M. SIMONTON**
                 **UNITED STATES DISTRICT JUDGE**

**Copies furnished to:**

**The Honorable Federico A. Moreno**
  **Chief United States District Judge**
**All counsel of record**